IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MALIK M. STELLY, | |
| Petitioner, | 8:23CV342 |
| vs. | MEMORANDUM AND ORDER |
| ROB JEFFREYS, Director of the Nebraska Department of Corrections Service; | |
| Respondent. | |

Petitioner Malik M. Stelly ("Petitioner" or "Stelly") filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 on August 7, 2023. Filing No. 1. Respondent filed a Motion for Summary Judgment, Filing No. 13, along with the relevant state court records, Filing No. 14, a statement of undisputed material facts, Filing No. 15, and a brief in support, Filing No. 16. Stelly filed a brief in opposition, Filing No. 17, a statement of additional material facts, Filing No. 18, and a request for additional documents (hereinafter "Motion for Documents"), Filing No. 19.[1] Respondent filed a response to Stelly's statement of additional facts, Filing No. 21, and a reply brief, Filing No. 22. For the reasons that follow, the Court will deny Stelly's Motion for Documents and will dismiss his habeas petition with prejudice because it is barred by the limitations period set forth in 28 U.S.C. § 2244(d).

---

[1] Stelly failed to sign his brief, statement of additional material facts, and Motion for Documents upon initial filing. After being advised of the signature deficiencies, see Filing No. 20 (text order), Stelly submitted signed copies of each document. Filing No. 17-1; Filing No. 18-1; Filing No. 19-1. For ease of reference, the Court will simply refer to the initial filing number for each document.

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]  The moving party bears the initial responsibility of informing the court of the basis for the motion and must identify those portions of the record which the moving party believes show the lack of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  If the moving party does so, the burden then shifts to the nonmoving party, who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted. *Smith-Bunge v. Wisconsin Cent., Ltd.,* 946 F.3d 420, 424 (8th Cir. 2019).

---

[2] Rule 56 of the Federal Rules of Civil Procedure applies to habeas proceedings pursuant to Rule 12 of the *Rules Governing Section 2254 Cases in the United States District Courts* ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.") and Fed. R. Civ. P. 81(a)(4) ("These rules apply to proceedings for habeas corpus and for quo warranto to the extent that the practice in those proceedings: (A) is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions.").  However, "summary judgment principles apply on federal habeas only to the extent they do not conflict with habeas rules."  Brian R. Means, Federal Habeas Manual § 8:36.

2

## II. EVIDENCE PRESENTED

In accordance with the Court's progression order, Filing No. 9, Respondent filed a statement of undisputed material facts outlining the procedural history of Stelly's state court proceedings with references to the record. Filing No. 15. The documents referenced include copies of portions of the Nebraska Supreme Court's transcripts in Stelly's postconviction review appeals, Filing No. 14-6; Filing No. 14-7; Filing No. 14-8, copies of the State's motions for summary affirmance and the Nebraska Supreme Court's orders granting those motions in Stelly's postconviction appeals, Filing No. 14-9; Filing No. 14-10; Filing No. 14-11; Filing No. 14-12, and certified copies of the docket sheets in Stelly's appeals, Filing No. 14-2; Filing No. 14-3; Filing No. 14-4; Filing No. 14-5.

Stelly filed a brief in opposition to Respondent's summary judgment motion, Filing No. 17, and a statement of additional material facts, Filing No. 18. However, Stelly does not dispute any of Respondent's statement of material facts in either his brief or his statement. *See* Filing No. 17; Filing No. 18. Additionally, Stelly's statement of additional material facts contains several legal conclusions and arguments and does not comply with the Court's local rules, which require that such statement "consist of <u>short</u> numbered paragraphs" with "pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a)(2), (b)(2) (emphasis in original). As a result, Respondent states that he is unable to respond with "a statement of concise responses" in the form required by the Court's local rules, *see* NECivR 56.1(b)(1)(A), (c), and "simply notes that [he] disputes Petitioner's statement of additional facts in its entirety, as it does not cite to anything in the record offered in support of this motion for summary judgment,

3

see (filing nos. 14 through 14-12), but, rather, cites only to items outside that record, see (filing no. 18-1)." Filing No. 21.

As Stelly has failed to dispute any of Respondent's statements of fact, Respondent's statement of material facts regarding the procedural history of Stelly's state court proceedings will be deemed admitted for purposes of deciding the motion. *See* NECivR 56.1(b)(1)(B) ("Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." (emphasis omitted)). Stelly's statement of additional material facts will not be deemed admitted, but the Court will, of course, consider Stelly's arguments raised in the statement and the brief, as well as the evidence he submitted with his petition, Filing No. 1, and supplement, Filing No. 7, in ruling on Respondent's summary judgment motion.[3]

### III. FACTS AND PROCEDURAL BACKGROUND

#### A. Conviction and Direct Appeal

Following a jury trial, Stelly was convicted of first degree murder, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a prohibited person. *State v. Stelly*, 932 N.W.2d 857 (Neb. 2019) ("*Stelly I*"); *see also* Filing No. 1 at 130–52, Ex. 17. Stelly's convictions were in relation to the January 11, 2017, shooting death of D'Angelo Branch in the area of 3615 Laurel Avenue, Omaha, Nebraska. *See Stelly I, supra*; Filing No. 1. The state district court sentenced Stelly to life imprisonment on the

---

[3] Stelly attached twenty-seven exhibits to his petition, Filing No. 1 at 42–189, and supplement, Filing No. 7 at 2, along with an affidavit authenticating the exhibits as "true and correct to the best of his knowledge and belief." Filing No. 8 (spelling corrected). As such, the Court may properly consider Stelly's exhibits in ruling on Respondent's summary judgment motion. *See* NECivR 7.1(b)(2)(C); NECivR 56.1; *see also PW Eagle, Inc. v. Schnase*, 376 F. Supp. 2d 945, 946 (D. Neb. 2005) ("The local rules require that documents used as evidence to support or oppose a motion must be authenticated by affidavit.").

murder conviction and to consecutive terms of 30 to 40 years' imprisonment on the other two convictions. *Stelly I*, 932 N.W.2d at 867; Filing No. 1 at 1.

On January 11, 2018, Stelly appealed. Filing No. 14-2 at 2. On September 13, 2019, the Nebraska Supreme Court affirmed Stelly's convictions and sentences. Filing No. 14-2 at 4–5; *see also Stelly I, supra.*

## B. Postconviction Motions

On November 8, 2019, Stelly filed a motion for postconviction relief in the state district court. Filing No. 14-6 at 2–20. Stelly later filed an amended motion for postconviction relief in January 2020. *Id.* at 21–44. The state district court subsequently denied Stelly's amended motion without an evidentiary hearing. *Id.* at 45–52; *see also* Filing No. 1 at 153–58, Ex. 18. On September 2, 2020, Stelly appealed. Filing No. 14-3 at 2. On March 12, 2021, the Nebraska Supreme Court affirmed the state district court's judgment. *State v. Stelly*, 955 N.W.2d 729 (Neb. 2021) ("*Stelly II*"); *see also* Filing No. 1 at 159–72, Ex. 19. The case was mandated on March 26, 2021. Filing No. 14-3 at 2.

Thereafter, on May 25, 2021, Stelly filed a motion for new trial, a request for hearing, and an application to proceed in forma pauperis. *See* Filing No. 14-7 at 2. The state district court denied Stelly's filings on the ground that they were frivolous. *Id.* Stelly appealed, and the State of Nebraska filed a motion for summary affirmance, which the Nebraska Supreme Court granted. Filing No. 14-4; Filing No. 14-9; Filing No. 14-10; *see also* Filing No. 1 at 173–78, Ex. 20–21. The case was mandated on January 10, 2022. Filing No. 14-4 at 2.

On January 5, 2023, Stelly filed a successive motion for postconviction relief in the state district court. Filing No. 14-8 at 2–61. The state district court denied Stelly's

successive motion without an evidentiary hearing as both time-barred and procedurally barred. *Id.* at 62–64; *see also* Filing No. 1 at 179–80, Ex. 22. Stelly appealed. Filing No. 14-5 at 2. The State of Nebraska filed a motion for summary affirmance, which the Nebraska Supreme Court granted. Filing No. 14-11; Filing No. 14-12; *see also* Filing No. 1 at 181–87, Ex. 23–24. The mandate issued on July 10, 2023. Filing No. 14-5 at 2.

**C. Habeas Petition**

Stelly filed his habeas petition in this Court on August 7, 2023. Filing No. 1. Thereafter, the Court conducted a preliminary review of the petition and summarized Stelly's claims as follows:

Claim One:      Trial counsel was ineffective because counsel failed to call an expert witness who would testify that the data officers purportedly extracted from the cellphone found near the victim was not, in fact, present on it and officers manufactured the phone evidence causing fraud on the court.

Claim Two:      Trial and appellate counsel were ineffective because they failed to competently litigate Petitioner's Fourth Amendment claim.

Claim Three:    Trial counsel was ineffective because counsel failed to consult with or call as a witness an independent ballistics expert where shell casings and projectiles were planted at the crime scene.

Claim Four:     Trial counsel was ineffective because counsel failed to investigate the 3302 Fowler Avenue homicide and call an

6

independent    ShotSpotter    expert    witness    regarding
ShotSpotter data misrepresented by the State.

Filing No. 9 at 1–2.

The Court directed Respondent to file a motion for summary judgment or state court records in support of an answer.  Id. at 2.  Respondent filed his summary judgment motion on March 12, 2024, arguing the habeas petition is barred by the statute of limitations.  Filing No. 13.  Stelly filed his brief in opposition, Filing No. 17, along with his statement of additional material facts, Filing No. 18, and Motion for Documents, Filing No. 19, arguing that his petition was timely filed pursuant to 28 U.S.C. § 2244(d)(1)(D) and equitable tolling and/or the miscarriage of justice, or actual innocence, exception applies to overcome any statute of limitations bar.  Respondent filed a reply brief on April 10, 2024.  Filing No. 22.  This matter is fully submitted for disposition.

## IV.  ANALYSIS

### A.  One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, establishes a one-year limitations period for state prisoners to file for federal habeas relief that runs from the latest of four specified dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  The statute of limitations period is tolled, however, for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2).

### 1. § 2244(d)(1)(A)

Stelly does not argue, nor can it be reasonably asserted, that his habeas petition was timely filed within one year of his conviction becoming final.  Stelly's state court judgment became final on December 12, 2019, ninety days after the Nebraska Supreme Court affirmed Stelly's convictions and sentences on direct appeal.  *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (holding that, for petitioners who do not pursue direct review all the way to the United States Supreme Court, a judgment becomes final "when the time for pursuing direct review in [the Supreme Court], or in state court, expires."); *King v. Hobbs*, 666 F.3d 1132, 1135 (8th Cir. 2012) ("If the Supreme Court has jurisdiction to review the direct appeal, the judgment becomes final ninety days after the conclusion of the prisoner's direct criminal appeals in the state system.") (citing Sup. Ct. R. 13.1).  As Stelly filed his first postconviction motion on November 8, 2019, the limitations period began to run at the conclusion of his first postconviction appeal on March 26, 2021.  *See Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (state postconviction application "remains pending" until "the State's highest court has issued its mandate or denied review" and "the 1–year limitations period [is not tolled] during the pendency of a petition for certiorari").

Sixty days then elapsed between March 26, 2021, and May 25, 2021, when Stelly filed his motion for new trial.  The motion for new trial proceedings concluded, at the latest,

8

on January 10, 2022, when the Nebraska Supreme Court entered its mandate. Thereafter, another 360 days passed before Stelly filed his successive postconviction motion on January 5, 2023, and an additional 24 days passed between the entry of the mandate on Stelly's successive postconviction appeal and August 3, 2023, the date on which his habeas petition is deemed filed under the prison mailbox rule.  *See* Filing No. 1 at 15; *United States v. Harrison*, 469 F.3d 1216, 1217 (8th Cir. 2006) ("Under the prison mailbox rule, a pro se pleading is deemed filed upon deposit in the prison mail system prior to the expiration of the filing deadline.").  Even if the Court assumes the limitations period was tolled during his motion for new trial and successive postconviction motion proceedings, a total of 444 days passed between his conviction becoming final and the filing of his federal habeas petition.  Thus, Stelly's habeas petition is not timely under 28 U.S.C. § 2244(d)(1)(A).

### 2.  *28 U.S.C. § 2244(d)(1)(D)*

Stelly contends that subsection (D) of 28 U.S.C. § 2244(d)(1) applies here as he could not discover the factual predicates of his habeas claims until after he received his case file from his trial counsel on January 18, 2022, which "contained the Sprint Record,[4] Incident Detail Report,[5] and Ballistic Report[6] never seen before by the Petitioner which

---

[4] The "Sprint Record" refers to "the PCMD [Per Call Measurement Data] section of the Sprint Record that listed Stelly's cell phone device Electronic Serial Number as ESN#35875607064121."  Filing No. 17 at 4. Stelly attached a copy of the Sprint Record to his Petition as Exhibit 11.  Filing No. 1 at 88–114, Ex. 11.

[5] As Stelly specified in his brief, "the Omaha Police Department's Incident Detail Report (OMPD2017011100010496) . . . states on pg. 3 Shotspotter detected three shots fired at 3615 Laurel Avenue Flex Id. 149134."  Filing No. 17 at 4.  Stelly attached a copy of the Incident Detail Report to his petition as Exhibit 12.  Filing No. 1 at 115–17, Ex. 12.

[6] The "Ballistic Report" refers to "Omaha Police Technician Angela Harder's Ballistic Report which list[s] the width of land and groove areas on fired projectiles recovered in the investigation," Filing No. 17 at 4, and is contained in the record as Exhibit 14 to the petition, Filing No. 1 at 122–24, Ex. 14.

are the sources of the Petitioner's factual basis of the constitutional violations alleged."
Filing No. 1 at 13–14 (capitalization altered from original).  Respondent argues, however,
that, even if January 18, 2022, is assumed to be the start date for the one-year limitations
period, Stelly's habeas petition still was not timely filed.  First, Respondent submits that
Stelly's successive postconviction motion did not toll the one-year limitations period while
it was pending from January 5, 2023, to July 10, 2023, because his motion was not timely
filed.  Filing No. 16 at 2 (citing *Pace v. DiGuglielmo*, 544 U.S. 408 (2005) (holding that a
habeas petitioner's state postconviction motion which was rejected by the state court as
untimely under the state statute of limitations was not "properly filed," within the meaning
of AEDPA's statutory tolling provision); Filing No. 14-8 at 62–64; Filing No. 14-11; Filing
No. 14-12).  Second, Respondent contends that even if the successive postconviction
motion proceedings were considered to toll the limitations period, 352 days had already
elapsed from January 18, 2022, to January 5, 2023, so Stelly would have had only 13
days after July 10, 2023, to file his habeas petition.  Filing No. 16 at 2–3.  As indicated
above, however, Stelly did not place his habeas petition in the prison mailing system until
24 days after July 10, 2023, making his petition untimely.

In response to Respondent's arguments, Stelly asserts for the first time in his brief
that the date on which the factual predicate of his claims could have been discovered
through due diligence was not January 18, 2022, but rather December 18, 2022.  Filing
No. 17 at 4–5.  Stelly contends that he received his case file on January 18, 2022, which
"contained over five thousand documents," and "[e]xtracting the factual predicates of the
constitutional violations alleged in the habeas petition from the case file took eleven
months," until December 18, 2022.  *Id*. at 5.  However, Stelly did not allege December 18,

2022, as the relevant date for calculating the limitations period in his habeas petition, *see* Filing No. 1 at 13–14, nor did he raise such argument in the state courts, *see* Filing No. 14-8 at 4–5 (asserting in his successive postconviction motion that "January 18, 2022, is the date in which the factual predicate of the Constitutional Violations claims alleged in this PCR motion could have been discovered by Stelly, in his exercise of due diligence").

Whether January 18, 2022, or December 18, 2022, is used for purposes of applying 28 U.S.C. § 2244(d)(1)(D), the Court concludes, after careful review, that Stelly's argument that he could not have discovered the factual predicate of his habeas claims through the exercise of due diligence until after he received his case file is not persuasive nor is it supported by the record.

Under Section 2244(d)(1)(D), "the statutory clock begins ticking when the factual predicate was or could have been 'discovered.'" *Dixon v. Wachtendorf*, 758 F.3d 992, 994 (8th Cir. 2014). "The factual predicate of a petitioner's claims constitutes the vital facts underlying those claims." *Earl v. Fabian*, 556 F.3d 717, 725 (8th Cir. 2009) (quoting *McAleese v. Brennan*, 483 F.3d 206, 214 (3rd Cir. 2007)). In *Earl*, the Eighth Circuit "considered the distinction between knowledge of vital facts, on the one hand, and the way in which those facts are gathered and presented, on the other. The knowledge of the facts themselves is the factual predicate; the way in which they are packaged are not." *Rick v. Harpstead*, 564 F. Supp. 3d 771, 778–79 (D. Minn. 2021) (internal citation omitted) (citing *Earl*, 556 F.3d at 726). Similar to Stelly, the petitioner in *Earl* claimed that he could not have discovered the factual predicate of his habeas claim until he received his case file and his petition filed four months after receipt of the case file was, therefore,

timely.  *Earl*, 556 F.3d at 725.  The Eighth Circuit rejected this argument, and their reasoning is instructive:

> Earl alleges that his constitutional rights were violated when the state introduced his confession at trial, and this allegation is the vital fact underlying his claim.  Because Earl's habeas petition lists this single claim for relief and he made the very same argument before the state courts, he knew the factual predicate of his claim even before the date on which he could file for habeas relief.  While Earl certainly wanted his case file earlier, "[s]ection 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim." *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998).  Earl is "confusing his knowledge of the factual predicate of his claim with [the process of] gathering evidence in support of that claim." *Id*.  As Judge Easterbrook has explained, "[a] desire to see more information in the hope that something will turn up differs from the factual predicate of a claim or claims for purposes of 2244(d)(1)(D)." *Johnson v. McBride*, 381 F.3d 587, 589 (7th Cir.2004) (internal quotation marks omitted).

*Earl*, 556 F.3d at 725–26.

Here, Stelly contends that the Sprint Report, the Incident Detail Report, and the Ballistic Report, which were contained within his case file, serve as the factual bases for his habeas claims.  However, Stelly raises claims of ineffective assistance of trial and/or appellate counsel in his habeas petition as related to evidence adduced or not adduced at trial, *see* Filing No. 1 at 5–10; Filing No. 9 at 1–2, and, as such, the factual predicates of those claims could have been discovered at the time of Stelly's trial in 2017 or at the time of his direct appeal in 2019.  Indeed, Stelly raised Claims One, Three, and Four on direct appeal, *see Stelly I*, 932 N.W.2d at 875–77, and Claim Two in his first postconviction motion, *see* Filing No. 14-6 at 39–43; *Stelly II*, 955 N.W.2d at 737–38.  Trial and/or appellate counsel's failure to call witnesses or investigate allegedly manufactured phone evidence, ballistics evidence, and ShotSpotter evidence are the vital facts underlying Stelly's claims; the Sprint Report, the Incident Detail Report, and the Ballistic Report

simply constitute additional evidence in support of those claims. Thus, the Court finds Stelly's petition was not timely filed under Section 2244(d)(1)(D) as that section does not apply to extend the limitations period to the time during which Stelly attempted to gather additional evidence to support his previously-asserted claims.

## B. Equitable Tolling

Stelly argues equitable tolling should apply to excuse his failure to timely file his habeas petition. *See* Filing No. 1 at 18; Filing No. 17 at 6. Generally, a litigant seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Walker v. Norris*, 436 F.3d 1026, 1032 (8th Cir. 2006). "Equitable tolling is 'an exceedingly narrow window of relief,'" *Riddle v. Kemna*, 523 F.3d 850, 857 (8th Cir. 2008) (quoting *Jihad v. Hvass*, 267 F.3d 803, 805 (8th Cir. 2001)), and "is proper only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000).

Here, Stelly contends he is entitled to equitable tolling because "the State misrepresented the facts of the case, Stelly's trial counsel . . . retained possession of documents that were crucial to Stelly's claims, Stelly reasonably relied on the State's misrepresentations, and Stelly demonstrated due diligence in pursuing his § 2254 claims." Filing No. 17 at 6 (punctuation corrected). Upon careful review, the Court finds Stelly's allegations in favor of equitable tolling conclusory and without support in the record. Stelly previously raised all his habeas claims in his direct appeal and first postconviction motion, and nothing suggests some extraordinary circumstance prevented Stelly from timely filing his habeas petition after the conclusion of his first postconviction proceedings. Under the

circumstances, the fact that Stelly's trial counsel did not provide Stelly with his case file until January 18, 2022, does not constitute an extraordinary circumstance warranting equitable tolling. *See Sellers v. Burt*, 168 F. App'x 132, 133 (8th Cir. 2006) (finding petitioner not entitled to equitable tolling based on post-conviction attorney's failure to communicate with him and send case file under general rule that "[i]neffective assistance of counsel generally does not warrant equitable tolling" (quoting *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir.2002))).

## C.  Actual Innocence or Miscarriage of Justice Exception

Stelly argues that he is actually innocent and the miscarriage of justice exception to the AEDPA one-year statute of limitations applies to permit the Court to consider the claims raised in his habeas petition. Filing No. 1 at 13, 18; Filing No. 17 at 7–8.

In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court established a gateway for untimely habeas claims in the event of a tenable actual-innocence claim. The Supreme Court cautioned, however, "that tenable actual-innocence gateway pleas are rare:  A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)) (internal quotations and alterations omitted). The actual-innocence exception requires a habeas petitioner to come forward with "new reliable evidence" which was "not available at trial through the exercise of due diligence." *Schlup*, 513 U.S. at 324. Moreover, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. U.S.*, 523 U.S. 614, 623 (1998) (citation omitted). The actual innocence standard is a "demanding" one, and "[t]he gateway should open only when a

14

petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316).

### 1. Additional Background

In evaluating Stelly's gateway actual-innocence claim, the following recitation of facts from the Nebraska Supreme Court's opinion in *Stelly I* provides helpful background:

On January 11, 2017, at 2:37 a.m., the "ShotSpotter" system in Omaha, Nebraska, indicated shots were fired in the area of 3615 Laurel Avenue. Officers responded to the alert and arrived on the scene within minutes to find D'Angelo Branch lying in a pool of blood on a residential sidewalk. Paramedics determined Branch had no pulse and declared him dead. An autopsy showed he died of multiple gunshot wounds to the head; in total, he sustained 16 wounds to the head and five additional wounds to his lower body.

### 1. INVESTIGATION

Several people who lived near the crime scene reported hearing multiple gunshots and seeing a silver Chrysler PT Cruiser driving away from the area. One person described the PT Cruiser as having rust around the wheel wells on the driver's side in both the front and the back. Surveillance video from a nearby residence showed a silver PT Cruiser in the area during the relevant time.

Officers collected 11 spent casings from a 9-mm firearm from around Branch's body. They also recovered two cell phones from the crime scene: an LG cell phone that was found in the street about 10 to 15 feet from Branch's body and a ZTE cell phone that was found in Branch's pocket.

Later that day, officers obtained a search warrant and extracted data from the LG cell phone found in the street. That data indicated the cell phone belonged to Stelly. After learning Stelly's address, officers went to surveil his apartment complex. They found a silver PT Cruiser in the parking lot at the complex. The PT Cruiser was registered to Stelly's friend, Royce White.

While surveilling the apartment complex, officers saw Stelly and White leave in a green Cadillac. The Cadillac was registered to White's girlfriend. Officers followed the Cadillac and ultimately conducted a traffic stop. Stelly and White were transported to the police station and interviewed. After authorities obtained buccal swabs from each, Stelly and White were released.

A search warrant was then obtained for Stelly's apartment and the PT Cruiser. During the search of the apartment, officers discovered the keys to the PT Cruiser under some couch cushions. They also found and seized a hat they believed Stelly was wearing during the relevant time period based on time-stamped photographs discovered on Stelly's social media profile. The search of the PT Cruiser showed it had damage to the wheel wells on the driver's side. Evidence adduced at trial showed that White had loaned Stelly his silver PT Cruiser before the shooting because Stelly's car had been in an accident. Stelly's fingerprint was recovered from the interior doorframe of White's PT Cruiser.

The LG cell phone found in the street near Branch's body, and the hat seized from Stelly's apartment, were examined by a forensic technician for blood and DNA testing. A few spots of blood were found on the underside of the hat brim, and the DNA was compared to known samples from Stelly, White, and Branch. Branch was not excluded

16

as the major contributor to the DNA contained in the blood spots, and the probability of that DNA's coming from someone other than Branch was 1 in 47.4 nonillion.  Stelly was not excluded as the major contributor to the DNA collected from the inside headband of the hat, and the probability of that DNA's having come from someone other than Stelly was 1 in 1.01 octillion.  DNA found on the LG cell phone was tested, Stelly was not excluded as the major contributor, and the probability of that DNA's having come from someone other than Stelly was 1 in 4.12 sextillion.

. . . .

## 2. MOTION TO SUPPRESS

Before trial, Stelly moved to suppress certain evidence.  As relevant to the issues raised on appeal, he sought to suppress evidence obtained from searching the contents of the LG cell phone found near Branch's body.   The LG cell phone was searched pursuant to a warrant which Stelly challenged as insufficient.  Specifically, Stelly claimed that the affidavit in support of the warrant, and the warrant itself, both identified the electronic device to be searched as the ZTE cell phone found in Branch's pocket rather than the LG cell phone that was actually searched.

At the suppression hearing, the warrant and attached affidavit were received into evidence.  The affidavit recited in pertinent part:

> On Wednesday, January 11th, [2017,] at 0237 hours [t]here was a ShotSpotter activation in the area of 3620 Laurel Avenue, Omaha, Douglas County, Nebraska.  Shortly after that a shooting was called in at the same location.

> When [o]fficers arrived on the scene they located a male party down . . . . This party was declared deceased by medic units at the scene.  The victim appeared to have been shot multiple times, including at close range. Several spent 9mm casings were located near the victim.

. . . .

An LG model LG-LS755; MEID-D:089806163100 409889 cellular telephone was located in the street about 10 feet to the west of where the victim was located. Another cellular telephone was located in the victim's pocket[.]

It is unknown, at this time, who the LG cellular telephone belongs to, a suspect or a victim. Affiant [o]fficers believe that if [they] were allowed to examine the electronic data located on this telephone it would be a benefit to this investigation.

The affidavit also stated that the electronic device to be searched was in the lawful possession of the Omaha Police Department and was "found in the street at the scene of a homicide and seized as evidence." But elsewhere in the affidavit, the device to be searched was identified as the ZTE cell phone. Likewise, the warrant that was issued identified the ZTE cell phone as the device to be searched. The warrant was issued January 11, 2017, after which the LG cell phone found in the street was searched.

The officer who swore the affidavit testified at the suppression hearing. He noticed, after returning the warrant, that he had "made an error when listing the cell phone itself in the search warrant and the affidavit as far as property being searched." According to the officer, his narrative description correctly referenced the LG cell phone found in the street and explained why law enforcement wanted to search that cell phone, but when identifying the electronic device to be searched, he mistakenly "listed the cell phone that was recovered from the victim himself as opposed to the cell phone that was found in the street." After noticing the error, the officer applied for and obtained another search warrant, this time referencing only the LG cell phone found in the street.

The district court determined that "[b]ased upon review of the search warrant and the [a]ffidavit attached thereto, it is clear that officers were seeking to search the LG phone

18

that was found lying in the street approximately ten feet from the victim's body." Relying on *State v. Kleinberg*,[ 421 N.W.2d 450, 453 (Neb. 1988),] in which we held that "an inadvertent defect in a search warrant may be cured by reference to the affidavit used to obtain the warrant if the affidavit is incorporated in the warrant or referred to in the warrant and the affidavit accompanies the warrant," the court found the search of the LG cell phone constitutional and overruled the motion to suppress. Stelly renewed his motion to suppress at trial, and again it was overruled.

### 3. TRIAL

The case was tried to a jury over a period of 9 days in October 2017. . . .

### (a) Murder Timeline

On January 10, 2017, the day before Branch was killed, Stelly and White celebrated Stelly's birthday. Stelly purchased some new clothes, including the hat later found in his apartment. At approximately 8 p.m., Stelly took several photographs with his cell phone and posted them on a social media website. One of these photographs showed Stelly wearing his recently purchased clothes.

Stelly's cell phone records indicate that from approximately 8:15 p.m. until just before 11 p.m. on January 10, 2017, his cell phone was "pinging off" a cell tower at 33d Street and Laurel Avenue, which was near White's house and the crime scene. Around midnight, Stelly's cell phone pinged off a cell tower at 40th and Grant Streets. And finally, between 1:43 and 1:51 a.m. on January 11, Stelly had a text message conversation with the mother of his son in which he stated he was "bored" and "wanna act bad." The shooting occurred at 2:37 a.m. on January 11.

*Stelly I*, 932 N.W.2d at 864–66.

### 2.  Actual Innocence Not Established

Liberally construed, Stelly asserts the Sprint Record, Incident Detail Report, and Ballistic Report constitute new evidence demonstrating it is more likely than not that no reasonable fact finder would have found him guilty.  Filing No. 17 at 7–8.  Even upon careful review of the record, the Court finds Stelly falls far short in meeting his burden to show actual innocence as none of the evidence he relies on is new or was not available at trial through the exercise of due diligence.

For instance, Stelly claims that the Sprint Record shows a different Electronic Serial Number ("ESN") for Stelly's cell phone than the one identified in the search warrants for the LG phone recovered near Branch's body and no reasonable fact finder would have found him guilty had they known this.  *Id*. at 7.  However, the record indicates "that the relevant ESN number from the Sprint Call Detail Report" was contained in the trial record.  *See* Filing No. 14-11 at 5 n.1.  In any case, regardless of any discrepancy between the search warrants and Stelly's Sprint Record regarding the model and ESN of the phone searched by officers, the conclusion is inescapable that officers obtained data from the LG phone recovered near Branch's body that connected the phone to Stelly. Moreover, the phone recovered at the scene of the crime was also connected to Stelly by his DNA.  *Stelly I*, 932 N.W.2d at 865.  Thus, Stelly's contention that the different ESN displayed in the Sprint Record shows the cell phone recovered at the scene did not belong to him is baseless and completely undermined by the record and the other evidence available at trial.

Similarly, Stelly's assertion that the Incident Detail Report's statement that ShotSpotter detected three shots fired at 3615 Laurel Avenue establishes that the State

20

manufactured fraudulent evidence of ShotSpotter audio of multiple gun shots to support Stelly's charge of first-degree murder is belied by the autopsy and photographic evidence presented at trial establishing that Branch was shot more than three times. *See Stelly I*, 932 N.W.2d at 864, 870. Finally, Stelly contends that the Ballistic Report also undermines the State's theory that Stelly shot the victim numerous times because, as Stelly alleges, the report shows that the bullets found at the scene were fired from multiple weapons. However, this evidence is clearly not new as Stelly raised this same claim in his direct appeal. *Stelly I*, 932 N.W.2d at 876.

In short, nothing Stelly has presented here comes close to suggesting new evidence so strong as to undermine the Court's confidence in the outcome of his trial. As such, the Court finds Stelly has failed to carry his burden under *Schlup* that, if the Sprint Record, Incident Detail Report, and Ballistic Report evidence had been presented at trial, "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329.

## V. MOTION FOR DOCUMENTS

Stelly filed a Motion for Documents, which he titled "Request for Additional Documents" followed by a list of eighteen documents with Stelly's explanation of what each document will show. Filing No. 19. Liberally construed, Stelly seeks to have the documents listed be made part of the record in his case. However, fourteen of the eighteen documents Stelly requests are already contained in the record of this case as attachments to Stelly's habeas petition, Filing No. 1, and supplement, Filing No. 7. Filing No. 1 at 42–51, 77–85, 88–127, Exs. 1–6, 9, 11–15; Filing No. 7 at 2, Ex. 27. As previously indicated, the Court has considered all of the attachments to Stelly's petition and

supplement in ruling on Respondent's summary judgment motion. *See* Section II, *supra*. As such, the Court will deny Stelly's motion with respect to these fourteen documents already contained within the record as moot.

The remaining four documents Stelly seeks to add to the record, and his reasons for requesting the documents, are:

1) An Omaha Police Department ("OPD") Incident Detailed Report for Darnesha Mitchell, the victim of a separate homicide that occurred on January 11, 2017, at 3302 Fowler Avenue which "will establish the fact eight shots were detected by Shotspotter at 3302 Fowler Avenue and three shots were detected by Shotspotter at 3615 Laurel Avenue" and eleven total shots were detected "for the entire area to include both homicide locations";

2) "Cellular telephone device make and model (Specifications) for a LG Model LS 751 Volt and a LG Model LS 755 X Power . . . [to] establish the fact that" the two devices "are distinctively different";

3) "Subscriber and Per Call Measurement Data (PCMD) records for the LG Model LS 755 cell phone ESN# 089806163100409889 recovered near the victim [Branch] at 3615 Laurel Avenue January 11, 2017," for the timeframe of January 1, 2017, to January 11, 2017, because the Sprint Record states Stelly's cell phone during that timeframe "had an Electronic Serial Number listed as ESN# 35875607064121" and, thus, rebuts the State's assertion that Stelly's cell phone was the one recovered near the victim; and

4) "[OPD] Citation #OP1526131 Report #P0470158; Traffic stop gives time stamp to establish [Officer] Queen know [sic] Stelly's cell phone device was an LG

Model LS 751 Volt ESN# 35875607064121 before executing the warrant at [Stelly's residence on] January 11, 2017."

Filing No. 19 at 3–4.

Generally speaking, Stelly seeks these documents to support his actual innocence arguments that he did not shoot Branch multiple times as the State contended at trial and the cell phone recovered by police near Branch's body did not belong to Stelly. However, even if the Court assumed the four documents Stelly seeks would show what Stelly claims they would, the Court finds such evidence would still be insufficient to establish Stelly's actual innocence, particularly in light of the other evidence tying Stelly to Branch's murder as discussed above. Accordingly, Stelly's Motion for Documents is denied.

## VI. CONCLUSION

Under either subsection (d)(1)(A) or (d)(1)(D) of 28 U.S.C. § 2244, the Court concludes Stelly's habeas petition is untimely filed and equitable tolling is not warranted. Also, upon careful review of Stelly's arguments and evidence offered in support of his gateway actual-innocence claim, the Court finds that Stelly has failed to meet his burden to show that the miscarriage of justice exception applies to overcome the procedural bar of the statute of limitations and an evidentiary hearing is not necessary. The Court, therefore, will dismiss the habeas petition with prejudice.

## VII. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on a petition for writ of habeas corpus under § 2254 unless granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural

23

grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). The Court has applied the appropriate standard and determined that Stelly is not entitled to a certificate of appealability.

IT IS THEREFORE ORDERED that:

1.    Respondent's Motion for Summary Judgment, Filing No. 13, is granted.

2.    Petitioner's Motion for Documents, Filing No. 19, is denied

3.    Petitioner's habeas petition, Filing No. 1, is dismissed with prejudice because it is barred by the limitations period set forth in 28 U.S.C. § 2244(d).

4.    The Court will not issue a certificate of appealability in this matter.

5.    A separate judgment will be entered.


Dated this 31st day of March, 2025.


BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge